J. BRUCE NACCARI, Judge Pro Tem.,
concurring with written reasons.
Although I concur in the majority’s result on all of the issues in this case, I arrive at the decision that Traver should be allowed to complete the extraction operations by different reasoning.
It is clear that there is no statutory prohibition against drilling within one mile of the Causeway, or indeed within any proximity to the bridge. While it is inconceivable that the legislature has failed to address this serious situation, it is equally appalling that the permitting authorities apparently spent little time investigating the potential of harm to the motorists on the bridge. Nevertheless, in the absence of statutory prohibition the trial court was faced with a situation in which it was required to decide whether or not the activity in question presented an unreasonable risk of harm. I believe the trial judge made a fundamental error in selecting the test to be used in determining whether or not the risk of harm was unreasonable. The trial court set out to determine whether or not this activity, with all its safeguards, presented a situation which was more dangerous than those risks presented by navigation normally conducted near the bridge. The fallacy in using this test is that navigation near the bridge cannot be prohibited without interfering with interstate commerce, something the state has no right to do, while the drilling of an oil well in proximity to the bridge is not a protected right. The test that should have been used is a balancing test which weighs the potential of harm to neighboring parties against the utility gained by a party’s disruptively exercising its rights. Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980); Farr v. Montgomery Ward and Co., Inc., 430 So.2d 1141 (La.App. 1st Cir.1983). Had the trial court used the proper test, other methods of drilling and extraction such as the directional drilling method used by Pogo, Traver's predecessor, would have been considered to determine whether or not drilling in proximity to the bridge was reasonable. If directional drilling or some other method of extracting oil without operating in close proximity to the bridge would have resulted merely in increased cost to the producer, clearly it could not be considered reasonable to allow the activity to proceed *1221 when the increased cost is weighed against the potential for loss of life.
This court, however, must take the case in its present posture. In fact, the drilling activities have been completed. The most dangerous part of the operation is over, leaving only the relatively less dangerous process of installing a pipeline for the extraction of the oil. With the installation of each length of pipe, the activity moves farther from the bridge. Even if this court refused to allow operations to continue, it would be necessary to have the well permanently capped before abandonment, a procedure which should pose a further danger to the bridge and would provide no ultimate benefit. It would be grossly unfair for this court to prohibit the completion of this work after a prior panel, by denial of an application for a stay order, allowed the well to be drilled. The extensive safety precautions instituted by the trial court 'have apparently been successful.. The worst is over, and the remaining operations should present no danger to the bridge.